No. 23-30634

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

MOLLY SMITH, individually and on behalf of all others similarly
situated, real party in interest ALEX A., *et al*,
*Plaintiffs-Appellees,*

v.

GOVERNOR JOHN BEL EDWARDS, in his official capacity
as Governor of Louisiana, *et al.,*
*Defendants-Appellants.*

On Appeal from the United States District Court
for the Middle District of Louisiana
Case No. 3:22-cv-573-SDD-RLB

## PLAINTIFFS'-APPELLEES' OPPOSITION TO
## DEFENDANTS'-APPELLANTS' EMERGENCY MOTION FOR STAY OF
## PRELIMINARY INJUNCTION PENDING APPEAL

David J. Utter, La. 23236*
THE CLAIBORNE FIRM, P.C.
410 E. Bay St.
Savannah, GA 31401
(912) 236-9559
david@claibornefirm.com

*Lead Counsel, Application for
admission to Fifth Circuit pending

Nancy Rosenbloom, NY 2168425**
ACLU National Prison Project
125 Broad St.
New York, NY 10004
(212) 549-2500
nrosenbloom@aclu.org

**Application for admission to Fifth
Circuit forthcoming

*ATTORNEYS FOR PLAINTIFFS-APPELLEES*
*[Additional Counsel Listed on Signature Page]*

# CERTIFICATE OF INTERESTED PARTIES

Molly Smith, *real party in interest*, Alex A., *et al.*
    Plaintiffs-Appellees
v.
Gov. John Bel Edwards, *in his official capacity as Governor of Louisiana*, *et al.*
    Defendants-Appellants

The undersigned counsel of record certifies that the following listed persons or entities described in Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.    MOLLY SMITH, on behalf of Alex A., Plaintiff-Appellee;[1]

2.    KENIONE ROGERS, on behalf of Charles C., Plaintiff-Appellee;

3.    JOHN BEL EDWARDS, in his official capacity as Governor of Louisiana, Defendant-Appellant;

4.    OTHA "CURTIS" NELSON, JR., in his official capacity as Deputy Secretary of the Louisiana Office of Juvenile Justice, Defendant-Appellant;

5.    JAMES LeBLANC, in his official capacity as Secretary of the Louisiana Department of Public Safety and Corrections, Defendant-Appellant;

6.    Russell Barksdale, Ashley Dalton, Marisol Dominguez-Ruiz, Sara Godchaux, Tammie Gregg, Ronald Haney, Jr., Corene Kendrick, Hector Linares, Meghan Matt, Susan Meyers, Christopher Murell, Nancy Rosenbloom, David

---

[1] Named Plaintiffs Alex. A. and Charles C. are minors, and proceed through pseudonym via next friends. *See* Fed. R. Civ. P. Rule 17(c)(2). Named Plaintiff Brian B. is deceased and no longer a named plaintiff.

i

Shanies, David Utter, Lauren Winkler, attorneys for Plaintiffs in the district court; and,

      7.     Connell Archey, Carly Chinn, Madaline King, Allena McCain, Kyle Miller, Lemuel Montgomery III, Anna Morris, Randal Robert, attorneys for Defendants in the district court.

      Signed the 15th of September, 2023, in New Orleans, Louisiana.

*/s/ Christopher Murell*
CHRISTOPHER MURELL
Louisiana Bar # 32075
*Attorney for Plaintiff/Appellee*
*Molly Smith, et al.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ iv

INTRODUCTION ................................................................................. 1

FACTUAL AND PROCEDURAL HISTORY ........................................... 2

LEGAL STANDARD ............................................................................ 4

ARGUMENT ........................................................................................ 5

   I.  A Stay Should Not Be Granted Because Defendants Are Unlikely to Succeed on the Merits of Their Appeal. ................................................................ 5

      A.  The Evidence Supports the Court's Findings of Plaintiffs' Likelihood of Success on Their Claims. ................................................................ 6

      B.  The District Court's Finding of Deliberate Indifference by Defendants is Based on Well-Settled Law. ................................................................ 12

      C.  Defendants' Contention That the PI Order Violates the Prison Litigation Reform Act Is Meritless and Does Not Warrant a Stay .................................. 13

   II. Defendants Are Not Irreparably Injured .................................................... 18

   III. Staying the PI Order Will Substantially Injure Plaintiffs ............................ 20

   IV. The Public Interest Weighs Against a Stay ............................................... 20

CONCLUSION .................................................................................... 22

CERTIFICATE OF COMPLIANCE .......................................................... 24

CERTIFICATE OF SERVICE .................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Alexander S. v. Boyd*,
   876 F. Supp. 773 (D.S.C. 1995) ........................................................9, 10

*Armstrong v. Schwarzenegger*,
   622 F.3d 1058 (9th Cir. 2010) ...............................................................17

*Baxley v. Jividen*,
   No. CV 3:18-1436, 2020 WL 1802935 (S.D. W.Va. Apr. 8, 2020) ....................15

*Belcher v. Birmingham Trust Nat'l Bank*,
   395 F.2d 685 (5th Cir. 1968) ....................................................................2

*Benjamin v. Fraser*,
   343 F.3d 35 (2d Cir. 2003) .....................................................................17

*Brown v. Plata*,
   563 U.S. 493 (2011) ................................................................ 11, 19, 21

*C.B.*,
   708 So.2d 391 (La. 1998) ..........................................................................2

*Cadena v. El Paso Cnty.*,
   946 F.3d 717 (5th Cir. 2020) ...................................................................13

*City of Revere v. Mass. Gen. Hosp.*,
   463 U.S. 239 (1983) ...............................................................................12

*Def. Distributed v. U.S. Dep't of State*,
   838 F.3d 451 (5th Cir. 2014) ...................................................................20

*Doe ex rel. Frazier v. Hommrich*, No. 3-16-0799, 2017 WL 1091864
   (M.D. Tenn. Mar. 22, 2017) ......................................................................8

*Farmer v. Brennan*,
   511 U.S. 825 (1994) ......................................................................... 12, 13

*Gates v. Cook,*
    376 F.3d 323 (5th Cir. 2004)......................................................... 11, 14

*Graham v. Florida,*
    560 U.S. 48 (2010) .............................................................................12

*H.C. ex rel. Hewett v. Jarrard,*
    786 F.3d 1080 (11th Cir. 1986).............................................................8

*Harris v. Johnson,*
    323 F. Supp. 2d 797 (S.D. Tex. 2004) .................................................21

*J.H. ex rel. N.H. v. Edwards,*
    No. CV 20-293-JWD-EWD, 2020 WL 3448087 (M.D. La. June 24, 2020).......14

*J.H. v. Williamson Cnty., Tenn.,*
    951 F.3d 709 (6th Cir. 2020).................................................................8

*Jensen v. Thornell,*
    No. 12-cv-00603, 2023 WL 2838040 (D. Ariz. Apr. 7, 2023) ..............8

*Jimerson v. Rheams,*
    No. CV 21-119-JWD-EWD, 2021 WL 2005492
    (M.D. La. Apr. 15, 2021), *report and recommendation adopted,*
    2021 WL 2006294 (M.D. La. May 19, 2021).......................................15

*Johnson v. Johnson,*
    385 F.3d 503 (5th Cir. 2004)...............................................................16

*Jones 'El v. Berge,*
    164 F. Supp.2d 1096 (W.D. Wisc. 2001).............................................18

*Jones 'El v. Berge,*
    172 F. Supp. 2d 1128 (W.D. Wis. 2001)..............................................15

*Jones v. Bock,*
    549 U.S. 199 (2007) .................................................................... 14, 16

*Jones v. Gusman,*
    296 F.R.D. 416 (E.D. La. 2013)...........................................................17

*Miller v. Alabama*,
    567 U.S. 460 (2012) ........................................................................12

*Milonas v. Williams*,
    691 F.2d 931 (10th Cir. 1982)................................................................8

*Morales v. Turman*,
    364 F. Supp. 166 (E.D. Tex. 1973) .......................................................9

*Morales v. Turman*,
    562 F.2d 993 (5th Cir. 1977).................................................................19

*Moussazadeh v. Tex. Dep't of Crim. Just.*,
    703 F.3d 781 (5th Cir. 2012)......................................................... 15, 16

*Nken v. Holder*,
    556 U.S. 418 (2009) .......................................................................2, 5

*Plata v. Brown*,
    427 F. Supp. 3d 1211 (N.D. Cal. 2013) ................................................16

*Reaves v. Dep't of Corrs.*,
    404 F. Supp. 3d 520 (D. Mass. 2019) ..................................................16

*Reed v. Palmer*,
    906 F.3d 540 (7th Cir. 2018)................................................................13

*Roper v. Simmons*,
    543 U.S. 551 (2005) ........................................................................12

*Terrebonne Parish Branch NAACP v. Edwards*,
    No. 14-69-SDD-EWD, 2020 WL 3263930 (M.D. La. June 17, 2020)..................5

*Texas v. United States*,
    787 F.3d 733 (5th Cir. 2015)................................................................5

*Tolliver v. Collins*,
    No. 2:08-cv-00722, 2010 WL 2640061 (S.D. Ohio Apr. 29, 2010),
    *report and recommendation adopted*, 2010 WL 2630091

(S.D. Ohio June 29, 2010)..................................................................15

*Topletz v. Skinner*,
  7 F.4th 284 (5th Cir. 2021)..........................................................4

*Valentine v. Collier*,
  956 F.3d 797 (5th Cir. 2020)......................................................19

*Wilson v. Epps*,
  776 F.3d 296 (5th Cir. 2015)......................................................14

*Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*,
  404 U.S. 1221 (1971)...................................................................5

*Yankton v. Epps*,
  652 F. App'x 242 (5th Cir. 2016) ..............................................15

*Youngberg v. Romeo*,
  457 U.S. 307 (1982) ...................................................................10

**Statutes**

18 U.S.C. § 3626(a)(1)(A) ................................................................17

18 U.S.C. § 3626(a)(2) ......................................................................17

18 U.S.C. § 3626(g)(4)......................................................................16

42 U.S.C. § 1997e(a)..........................................................................14

La. R.S. 15:905(F)................................................................................6

La. R.S. 15:905(F)(5)...........................................................................8

**Rules**

Fed. R. App. P., Rule 27(a)(2) ............................................................6

Fed. R. App. P., Rule 8(a)(2)(B)(ii).....................................................6

**INTRODUCTION**

The district court issued its preliminary injunction order ("PI Order" or "Doc. 267"), after seven days of hearings over three weeks. The court considered testimony, thousands of pages of evidence, and video footage, and found Defendants failed to meet constitutional and statutory minima for Plaintiffs, children incarcerated at a former Death Row building at Louisiana State Penitentiary-Angola. Doc. 267 at 2 ("the Court finds that the conditions of confinement of the youth incarcerated at Angola constitute cruel and unusual punishment, and the punitive atmosphere and systemic programming failures violate the Fourteenth Amendment"); *id.* at 17-18 (violations of disability statutes).[1] The court found Plaintiffs showed both a likelihood of success on the merits and irreparable harm absent preliminary injunctive relief. *Id.* at 2, 18 ("The youth at Angola are being victimized, traumatized, and seriously and irreparably harmed."). The court ordered any children currently incarcerated at Angola to other Office of Juvenile Justice ("OJJ") secure facilities in the state within a week of the date of its order. *Id.* at 20.

Defendants do not argue the court used the wrong legal standard. Instead, they express disagreement with its weight of facts and credibility determinations. *See* Dkt. 5-1 at 14-27. This does not establish an abuse of discretion on appeal,

---

[1] Citations to "Doc." are to the district court docket; "Dkt." refers to the filings in this appeal. Citations to page numbers of court filings are to the page assigned by the Court's Electronic Case Filing system.

Defendants are unlikely to prevail on the merits of their appeal, and a stay is unwarranted. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (citations and quotations omitted). It is an "extraordinary remedy." *Belcher v. Birmingham Trust Nat'l Bank*, 395 F.2d 685, 685 (5th Cir. 1968). Defendants fall far short of meeting this burden.

## FACTUAL AND PROCEDURAL HISTORY

Plaintiffs are a class of youth adjudicated delinquent, in the custody of OJJ who are, or are at risk of being, incarcerated at Angola. Doc. 243. OJJ took custody of Plaintiffs not to punish them, but to treat and rehabilitate them. Doc. 267 at 16 (quoting *In re C.B.*, 708 So.2d 391, 396-97 (La. 1998) ("the unique nature of the juvenile system is manifested in its non-criminal, or 'civil', nature, its focus on rehabilitation and individual treatment rather than retribution, and the state's role as *parens patriae* in managing the welfare of the juvenile in state custody.")).

On August 19, 2022, Plaintiffs filed this action on behalf of themselves and a putative class, to enjoin Governor Edwards' and OJJ's policy decision to transfer them to Angola, and moved for a temporary restraining order and preliminary injunction to stop the implementation of the plan. Doc. 3. The court held a preliminary injunction hearing September 6-8, 2022. It denied the motion, (Doc. 79),

based in substantial part on OJJ's "promises that it would not violate the constitutional or statutory rights of any youth placed at the Angola facility." Doc. 267 at 19; *see also* Doc. 243 at 5; Doc. 79 at 23-29.[2]

Defendants testified that Angola would serve as a temporary placement for a small number of children until a new facility opened in April 2023. Doc. 267 at 3; Doc. 79 at 17, 50. Defendants began moving youth to Angola in October 2022, and by late June 2023, had cycled about 80 boys through Angola, some as young as 15, all but one or two Black. Doc. 267 at 3 (70-80 of the 375 total youth in OJJ secure care have now passed through Angola); Doc. 166-11 (demographics). Defendants failed to stop using the unit in April as promised, and alarming reports of harmful conditions emerged: youth locked in cells for days, subjected to use of physical force and mace; minimal out-of-cell time for recreation, programming, or education; and frequently non-functioning cooling systems.[3]

On July 17, 2023, Plaintiffs moved a second time for a preliminary injunction, seeking again to enjoin Defendants' policy, and to have youth removed. Doc. 166 at 10. They alleged "Defendants broke their promises to the Court" and had "a chance to prove that they could lawfully provide rehabilitation for children in this horrific

---

[2] On October 25, 2022, Plaintiffs amended their complaint to add more named plaintiffs. Doc. 96. On October 31, 2022, they moved for class certification. Doc. 99. On August 31, 2023, the court certified the class and appointed the undersigned as class counsel. Doc. 243 at 21.

[3] The court dismissed the exposure to excessive heat claims for failure to exhaust under the Prison Litigation Reform Act ("PLRA"). Doc. 245.

adult maximum-security setting and Defendants spectacularly failed." *Id.* at 11, 12.[4]

After a seven-day evidentiary hearing, on September 8, 2023, the court ordered Defendants to move the youth currently at Angola to other OJJ secure facilities by September 15. Doc. 267.[5] On September 11, Defendants filed a notice of appeal of the PI Order, various evidentiary rulings, and the class certification order. Doc. 259. That same day, they filed an *ex parte* emergency motion with the district court to stay the PI Order pending appeal. Doc. 260. On September 12, the court denied Defendants' emergency stay motion. Doc. 265.[6] Defendants filed the instant Motion with this Court on September 13, Dkt. 5-1, and this Court ordered Plaintiffs to respond by September 15, 2023. Dkt. 15-2 at 2.

## LEGAL STANDARD

A district court's decision on preliminary injunctive relief is given deferential review. This Court reviews "the grant or denial of a preliminary injunction for abuse of discretion, with any underlying legal determinations reviewed *de novo* and factual findings for clear error." *Topletz v. Skinner*, 7 F.4th 284, 293 (5th Cir. 2021). When making its determination, the Court considers if: (1) the applicant made a strong showing of likely success on the merits; (2) the applicant will be irreparably injured

---

[4] On July 28, 2023, the U.S. Department of Justice filed a Statement of Interest "to draw the Court's attention to relevant case law and research regarding the serious and lasting harms that youth may experience when subjected to the alleged conditions of confinement, particularly isolation." Doc. 183 at 1.

[5] The Court's written order was filed on the docket on September 14, 2023. Doc. 267.

[6] The district court issued its stay denial before Plaintiffs could file a written opposition.

4

absent a stay; (3) a stay will substantially injure other interested parties; and (4) where the public interest lies. *Texas v. United States*, 787 F.3d 733, 746-47 (5th Cir. 2015) (quoting *Nken*, 556 U.S. at 426). "The first two factors . . . are the most critical," and the last two steps are reached only "[o]nce an applicant satisfies the first two factors." *Nken*, 556 U.S. at 434-35.

A stay "is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Id.* at 427 (citations omitted). A stay pending appeal is "extraordinary relief" and the movant has a "heavy burden." *Winston-Salem/Forsyth Cnty. Bd. of Educ. v. Scott*, 404 U.S. 1221, 1231 (1971). The movant "must address each factor, regardless of its relative strength, providing specific facts and affidavits supporting assertions that these factors exist." *Terrebonne Parish Branch NAACP v. Edwards*, No. 14-69-SDD-EWD, 2020 WL 3263930, at *2 (M.D. La. June 17, 2020) (citation omitted).

## ARGUMENT

### I.    A Stay Should Not Be Granted Because Defendants Are Unlikely to Succeed on the Merits of Their Appeal.

Defendants are unlikely to succeed on the merits of their appeal because the PI Order was not based on an erroneous legal conclusion or clearly erroneous evidentiary findings. Defendants offer a mishmash of failed arguments from previously rejected district court motions; clutter the record with evidence the

district court barred at trial, is hearsay, or was available to them at the time of trial but they failed to present; and conclusory statements.[7]

These conclusory assertions are not the required "strong showing" for a stay pending appeal. The PI Order was well-reasoned and grounded in settled law. The court considered and weighed the voluminous evidence, and found Plaintiffs established a likelihood of demonstrating Defendants' Eighth and Fourteenth Amendment violations, as well as violations of disability statutes.

## A. The Evidence Supports the Court's Findings of Plaintiffs' Likelihood of Success on Their Claims.

### 1. The Court Did Not Err in Finding the Use of Solitary Confinement Violates Children's Constitutional Rights.

The district court held "cell restrictions as used at Angola are *de facto* solitary confinement" and that "cell restrictions as used in Angola meet the statutory definition of solitary confinement" in state law. Doc. 267 at 15.[8] Evidence before

---

[7] The Court should not consider declarations attached to the Motion. Fed. R. App. P., Rule 27(a)(2). Including material outside the trial record is improper; appellate rules require "originals or copies of . . . sworn statements supporting facts subject to dispute," and does not permit a unilateral, self-serving expansion of the trial record to include evidence that could have been offered at trial and cross-examined if admitted. Fed. R. App. P., Rule 8(a)(2)(B)(ii). As noted in briefing pending before the district court, the declarations include evidence about acts allegedly committed by class members August 27-September 3, 2023. The events alleged all precede the PI Order, and all but the last occurred before the end of trial. This information was not introduced into evidence at trial, submitted as a proffer, or otherwise submitted as a motion for reconsideration. Moreover, the affidavits and attachments include evidence that was affirmatively excluded by the district court as irrelevant and unreliable. Defendants cannot use the Motion to indirectly present evidence that was barred or that they failed to admit at trial.

[8] Youth in OJJ custody may not be placed in "any form of solitary confinement for any reason other than a temporary response to behavior that poses a serious and immediate threat of physical harm to the juvenile or others." La. R.S. 15:905(F).

the court showed that solitary confinement is used for punishment, administrative convenience, protective custody, suicide intervention, and general behavior management.[9]

***First***, the court found all youth must spend 48-72 hours in their cell upon arrival to Angola for "orientation" for Defendants' administrative convenience. Doc. 279 at 4.

***Second***, the court found Defendants use solitary as punishment. Doc. 267 at 4. Youth are isolated for 24-72 hours for disciplinary reasons, including minor infractions or not attending programs. PX. 80 at 3. "Youth 3," was isolated for 19 days in June, 14 of them consecutively. Doc. 267 at 4. In June and July, a child was isolated nine consecutive days, and at least four youth were isolated for five consecutive days. *Id.*; *see* PX. 116 at OJJ-003748-51.

***Third***, the court found Defendants use solitary in lieu of mental health care. Doc. 267 at 4, 10. One child was isolated for at least a week after he expressed suicidal ideation. *Id.* at 4. He wore a vest-like smock called a "turtle suit." 8/21/23 Tr. 206:20-208:8. There are no records to show he was seen by health care staff after an act of self-harm. Doc. 267 at 10; 8/16/23 Tr. 196:12-16, 197:8-14, 198:22-24.

---

[9] Defendants use the euphemistic term of "room confinement" or "cell restriction" to refer to isolating youth in their cells except to take showers and occasionally go outside for recreation.

*Fourth*, the court found that mental health staff do not evaluate children in solitary to see if they remain a danger to themselves or others. Doc. 267 at 10; *see also* La. R.S. 15:905(F)(5) (requiring evaluation within eight hours); *see also* 8/21/23 Tr. 259:12- 261:6, 263:3-10; 8/16/23 Tr. 194:18-195:3. No mental health staff conduct wellness checks of youth in solitary. Doc. 267 at 10.

The court concluded that all evidence before it related to the use of solitary showed Plaintiffs established claims of Eighth and Fourteenth Amendment violations. *Id.* at 4, 5-6, 10, 15-16.[10]

### 2. The District Court Did Not Err in Finding Other Conditions of Confinement Likely Violate Children's Rights.

*Chemical Agents*:

The court found that despite Defendants' September 2022 promise under oath that staff would not carry chemical weapons, OJJ staff routinely use chemical agents. Doc. 267 at 5-7. Defendants' chemical agent logs showed at least five uses in July alone. *Id.* at 7. Shockingly, in early August 2023, officers used chemical spray on a

---

[10] *See also J.H. v. Williamson Cnty., Tenn.*, 951 F.3d 709, 718-20 (6th Cir. 2020) ("A growing chorus of courts have recognized the unique harms that are inflicted on juveniles when they are placed in solitary confinement.") (collecting cases); *H.C. ex rel. Hewett v. Jarrard*, 786 F.3d 1080, 1088 (11th Cir. 1986) (describing the emotional harm to a child caused by isolation for seven days); *Milonas v. Williams*, 691 F.2d 931, 942-43 (10th Cir. 1982) (affirming injunction against placing children in isolation for any reason other than to immediately contain violent behavior); *Jensen v. Thornell*, No. 12-cv-00603, 2023 WL 2838040, at *27 (D. Ariz. Apr. 7, 2023) (imposing a categorical prohibition on the use of solitary for youth tried as adults who are incarcerated in adult prisons in Arizona); *Doe ex rel. Frazier v. Hommrich*, No. 3-16-0799, 2017 WL 1091864, at *12 (M.D. Tenn. Mar. 22, 2017) (issuing a preliminary injunction prohibiting "placing juveniles . . . in solitary confinement or otherwise isolating them from meaningful contact with their peers as punishment or discipline").

child locked in his cell. *Id.* at 6-7; *see also* PX. 440. The child who was sprayed was left in his cell for at least ***six to seven minutes*** before officers, now wearing gas masks, returned to remove him and children exposed to spray in adjacent cells. *Id.*

Defendants have no guidelines for the use of chemical agents on children. 8/15/23 Tr. 205:6-10. One officer testified that the use of force continuum she was trained on is three verbal orders, next chemical spray, and then physical restraint. 8/16/23 Tr. 232:14-23. The court found Defendants' use of chemical agents violated children's Fourteenth Amendment due process rights. Doc. 267 at 16.[11]

*Use of Restraints*:

The court found an "indiscriminate use of hand cuffs" on children at Angola. Doc. 267 at 5, 6. Director London testified youth have been restrained by handcuffs and shackles during recreation time, and there is no documentation of the use of these restraints. *Id*. at 6. Restraints are used during activities as mundane as showering or board games: Judge Dick visited Angola and saw youth cuffed in the dining hall, when playing cards, and while journaling in a common area. *Id*. The

---

[11] Another court found the use of chemical spray on youth as "counterproductive. It causes more anger in the juveniles toward the adults who are supposed to be caring for them. The use of gas as a form punishment teaches the victims to inflict pain as a method of controlling others and makes the juveniles more volatile, more aggressive, and less likely to respond properly to authority figures." *Alexander S. v. Boyd*, 876 F. Supp. 773, 786 (D.S.C. 1995) (finding a 14th Amendment violation); *Morales v. Turman*, 364 F. Supp. 166, 173-74 (E.D. Tex. 1973) (using chemical agents on minors "in situations not posing an imminent threat to human life or an imminent and substantial threat to property—but merely as a form of punishment . . ." violates the Eighth Amendment).

court held Defendants' "untrained and undocumented use of handcuffs" violated the Fourteenth Amendment. Doc. 267 at 16.[12]

*Lack of Family Visits*:

The court recounted that at the September 2022 hearings, then-OJJ Secretary Sommers "passionately told the Court" that "Mamas need to hug their boys. . . A mama needs that touch, that boy needs that touch. And so, we will have that type of visitation at West Feliciana, no doubt." Doc. 267 at 7. But the court found Defendants deny family contact as a form of punishment. Doc. 267 at 7; PX. 399. For example, a mother who spoke frequently to her child was denied any contact for three weeks due to a behavioral infraction. *Id.* The court found the punitive denial of family contact violated the Fourteenth Amendment. Doc. 267 at 16.

*Mental Health Care*:

Angola's mental health staffing plan calls for two fulltime mental health professionals onsite on weekdays and on call on weekends, and a psychiatrist available for telemedicine. Doc. 267 at 8, 10. The court found staffing levels are inadequate to address children's needs, as there are no staff onsite, and to the extent there is any care it is "delivered by telemedicine, which, considering the excessive

---

[12] See *Youngberg v. Romeo*, 457 U.S. 307, 322, 324 (1982) (holding the Fourteenth Amendment provides a right of "freedom from unreasonable bodily restraint"); *Alexander S.*, 876 F. Supp. at 797-98 ("[T]he Due Process clause guarantees to youth who are incarcerated the right to . . . freedom from unreasonable bodily restraint").

use of cell restriction, is virtually unavailable." Doc. 267 at 8, 10. The failure to provide minimally adequate mental health care violates the Constitution. *See, e.g., Brown v. Plata*, 563 U.S. 493, 510-11 (2011) (prisoners have a right to health care, including mental health care); *Gates v. Cook*, 376 F.3d 323, 342-43 (5th Cir. 2004) (inadequate care for mental health violates the Eighth Amendment).

*Rehabilitative Services*:

In 2022, OJJ promised robust rehabilitation services at Angola, but they never materialized. Doc. 267 at 5, 8, 11. The court found what is provided does not meet program requirements. *Id*. at 8 ("The Court finds that the Transitional Treatment Unit at Angola is decidedly punitive and not rehabilitative"). Defendants failed to offer evidence of group counseling, and there is no social worker to offer treatment. *Id.* at 11. The court found the facility's sole case manager "tasked well beyond her education and training," and her services "anemic." *Id.*

*Education Services*:

Plaintiffs have a right to educational services while in OJJ custody and are entitled to 360 minutes of instruction daily. Doc. 267 at 8. Indeed, education is crucial to OJJ's rehabilitative mandate. The court found, crediting Plaintiffs' educational expert, that youth are systematically denied access to education and special education services. *Id.* at 8-9. There is an inadequate number of education staff, including special education staff, and they visited Angola only eight total days

11

in June and July, sometimes for mere minutes. *Id.* at 8; *see also* PX 93. Defendants

did not provide any teacher instruction to youth locked in their cells. Doc. 267 at 9.

The court found there was no evidence of any special education services for students

who had Individualized Education Plans. *Id.*

*Disability Subclass*:

Considering the above conditions, the court also held that Defendants' actions

violated Plaintiffs' and the Disability Subclass's rights under the Americans with

Disabilities Act and Section 504 of the Rehabilitation Act. *Id.* at 17-18. Defendants

did not seek a stay based on likelihood of success on the merits as to Plaintiffs'

disability law claims and, thus, any argument is waived.

## B. The District Court's Finding of Deliberate Indifference by Defendants is Based on Well-Settled Law.

Under the Eighth Amendment, officials act with deliberate indifference when

they: (1) have subjective knowledge that a person "is incarcerated under conditions

posing a substantial risk of serious harm," and (2) fail to take reasonable action to

abate those risks. *Farmer v. Brennan*, 511 U.S. 825, 834, 840, 842 (1994).[13]

---

[13] When evaluating Eighth Amendment challenges to criminal sentences of minors, youth have greater rights and protections than adults. *See, e.g., Roper v. Simmons*, 543 U.S. 551 (2005); *Graham v. Florida*, 560 U.S. 48 (2010); *Miller v. Alabama*, 567 U.S. 460 (2012). The court noted this body of law. *See* Doc. 267 at 12 ("Courts around the country have found increased protections for juveniles and persons with diminished capacities from inhumane treatment under the Eighth and Fourteenth Amendments."). Violations of the more stringent Eighth Amendment standard *a fortiori* violate the Fourteenth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983) (holding that "[T]he due process rights of a [detainee] are at least as great as the Eighth Amendment protections available to a convicted prisoner.").

Plaintiffs "need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official failed to act despite his knowledge of a substantial risk of serious harm[.]" *Id*. at 849. "[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that it was obvious." *Id*. at 842. In injunctive cases, their knowledge of the risk is presumed. *Id.* at 846 n.9. The only remaining question is if officials "responded reasonably to the risk" of harm. *Id*. at 844. Here, the district court found that they did not. Doc. 267 at 14-16.

The court found a likelihood of success on Plaintiffs' claim of deprivation of due process rights under the Fourteenth Amendment. Doc. 267 at 16. This is demonstrated by showing either an express intent to punish, or a restriction or condition not rationally related to the aims of confinement, or that is excessive. *Reed v. Palmer*, 906 F.3d 540, 550 (7th Cir. 2018) (collecting cases); *see also Cadena v. El Paso Cnty.*, 946 F.3d 717, 727 (5th Cir. 2020) (applying Fourteenth Amendment standard to non-criminally adjudicated pretrial detainees).

## C. Defendants' Contention That the PI Order Violates the Prison Litigation Reform Act Is Meritless and Does Not Warrant a Stay

Defendants contend the PI Order does not comply with the Prison Litigation Reform Act's ("PLRA's") requirements. These arguments are meritless, will not prevail upon appeal, and thus cannot be the basis for a stay.

13

### 1. Plaintiffs Met the PLRA's Exhaustion Requirement.

The PLRA requires incarcerated plaintiffs exhaust available administrative remedies before filing suit. *See* 42 U.S.C. § 1997e(a). In a class action, only a single class member need exhaust to satisfy the entire class's requirement. *Gates*, 376 F.3d at 330. The lower court has held multiple times that Plaintiffs meet this requirement, as Alex A. exhausted administrative remedies by filing an emergency grievance, which was rejected.[14] *See* Doc. 79 at 7; Doc. 243 at 15-18; Doc. 267 at 11. [15]

Defendants next argue the named plaintiffs had to re-exhaust before Plaintiffs filed the second PI motion because the claims there differed from the original complaint. Dkt. 5-1 at 15, 17-18. But the PLRA's plain language states exhaustion must be completed before bringing suit; it is not an ongoing requirement. *See* 42 U.S.C. § 1997e(a) ("No action *shall be brought* with respect to prison conditions . . . until such administrative remedies as are available are exhausted.") (emphasis

---

[14] A response to the emergency grievance is a "final decision" that allows incarcerated youth to file suit. *See* Doc. 79 at 7; *J.H. ex rel. N.H. v. Edwards*, No. CV 20-293-JWD-EWD, 2020 WL 3448087, at *43 (M.D. La. June 24, 2020).

[15] Under the operative grievance policy, after denial of Alex's emergency grievance, there were no further remedies to pursue. *See* Defs. Ex. 12 at 10 (providing that a "final decision" will be issued in response to an emergency grievance). Defendants' denial thus "constituted a final decision upon which Plaintiff could rely in filing suit." Doc. 79 at 7.

Alex was only required to follow the steps set forth in the grievance policy. *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (same). That policy has no requirement to pursue additional steps after an emergency grievance. Defs. Ex. 12 at 9-10. Apparently conceding the opaqueness of their policy rendered remedies unavailable, Defendants revised their policy following the *J.H.* decision and the decision in this case below. *See* Doc. 230 at 9 (conceding policy was revised "to ensure that youth have a clear and available avenue to exhaust administrative remedies.").

added). The Fifth Circuit has "never before held that, once he has initially exhausted available remedies, an inmate must re-exhaust" even if there are "changed circumstances." *Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 790 (5th Cir. 2012).

This applies equally to preliminary injunctions. "Once administrative remedies have been exhausted and the action has been 'brought,' the exhaustion requirement . . . is satisfied. Any claim for relief that is within the scope of the pleadings may be litigated without further exhaustion." *Jones 'El v. Berge*, 172 F. Supp. 2d 1128, 1134 (W.D. Wis. 2001) (rejecting argument that class members had to re-exhaust before filing motion for preliminary injunction); *see also Baxley v. Jividen*, No. CV 3:18-1436, 2020 WL 1802935, at *3 (S.D. W.Va. Apr. 8, 2020) (similar).[16]

Indeed, where the basis for a grievance is a "prison *policy*, [plaintiffs] need not file grievances regarding subsequent *incidents* in which the policy is applied." *Yankton v. Epps*, 652 F. App'x 242, 246 (5th Cir. 2016) (quoting *Johnson v. Johnson*,

---

[16] The cases on which Defendants rely are inapposite. In *Tolliver v. Collins*, the court denied a preliminary injunction because the new medical care claims were "entirely different" from the existing claims and involved "new, unnamed defendants, none of whom have been served[.]" *See* No. 2:08-cv-00722, 2010 WL 2640061, at *2 (S.D. Ohio Apr. 29, 2010), *report and recommendation adopted*, 2010 WL 2630091 (S.D. Ohio June 29, 2010). Here, the claims in Plaintiffs' motion are not new, are not "entirely different," and are not raised against a different set of defendants. *Jimerson v. Rheams* stands for the uncontroversial proposition that a plaintiff must exhaust administrative remedies before filing suit. No. CV 21-119-JWD-EWD, 2021 WL 2005492, at *2 (M.D. La. Apr. 15, 2021), *report and recommendation adopted*, 2021 WL 2006294 (M.D. La. May 19, 2021).

385 F.3d 503, 521 (5th Cir. 2004)). *See also Moussazedeh*, 703 F.3d at 788 ("Where the original grievance complains of a general prison policy, changed circumstances will not necessarily necessitate re-exhaustion.").[17]

### 2. The PI Order Is Not a Prisoner Release Order and Is the Least Intrusive Means to Correct the Harm.

Defendants assert the PI Order is a prisoner release order under the PLRA. Dkt. 5-1 at 19-20. Not so. The PLRA defines a prisoner release order as one that has the "purpose or effect of reducing or limiting the prison population," 18 U.S.C. § 3626(g)(4), which the PI Order will not do. The court only directed Defendants to remove about a dozen youth from unconstitutional conditions at Angola and move them *within* the OJJ system to other secure facilities, not out of OJJ custody altogether. *See, e.g., Plata v. Brown*, 427 F. Supp. 3d 1211, 1222-24 (N.D. Cal. 2013) (order directing prison system to transfer people at high risk from Valley Fever to other prisons was not a release order); *Reaves v. Dep't of Corrs.*, 404 F. Supp. 3d 520, 522-23 (D. Mass. 2019) (order transferring a prisoner to a non-correctional facility for medical treatment was not a release order as he was still in DOC custody).

Defendants argue the PI Order is not the least intrusive means to correct the alleged harm. Dkt. 5-1 at 18-19. This is a nonstarter. As a threshold matter, the PLRA

---

[17] Defendants suggest Alex A.'s grievances did not predict with enough specificity the level of harm facing him, should he be transferred to Angola, to put them on notice. But the PLRA does not require clairvoyance, and the grievance p olicy does not require a grievant to predict the specific harms she will suffer. *See Jones*, 549 U.S. at 218.

provision addressing preliminary injunctions, 18 U.S.C. § 3626(a)(2), does not require a district court make written findings that the order is narrowly tailored and the least intrusive means of addressing the alleged constitutional violations — unlike the permanent injunction provision, 18 U.S.C. § 3626(a)(1)(A). More importantly, "[n]arrow tailoring does not require perfection." *Jones v. Gusman*, 296 F.R.D. 416, 429 (E.D. La. 2013). "[T]he core concern of the intrusiveness inquiry [is] whether the district court [is] 'enmeshed in the minutiae of prison operations,' beyond what is necessary to vindicate plaintiffs' federal rights." *Armstrong v. Schwarzenegger*, 622 F.3d 1058, 1071 (9th Cir. 2010) (citation omitted). The question is "whether the same vindication of federal rights could have been achieved with less involvement by the court in directing the details of defendants' operations." *Id*.

Viewed in this light, the district court's order to transfer the 11-15 children currently incarcerated at Angola out of its unconstitutional conditions is less intrusive than if the court had issued an order permitting children to remain there, while dictating day-to-day minutiae of the conditions needed to meet constitutional minima in health care, solitary confinement, education services, outdoor recreation, access to family, and so on. *See Benjamin v. Fraser*, 343 F.3d 35, 53-54 (2d Cir. 2003) (affirming order that jail officials undertake a comprehensive window repair program as less intrusive than "the court examining each window," "even though the Constitution would certainly permit a broken window or two"); *see also*

*Jones 'El v. Berge*, 164 F. Supp.2d 1096, 1125-26 (W.D. Wisc. 2001) (granting preliminary injunction transferring several people with serious mental illness out of solitary confinement unit).

## II.    Defendants Are Not Irreparably Injured

Defendants claim they will suffer irreparable injury absent a stay, due to two alleged risks: (1) possible bodily harm to OJJ employees, other youth, or the public at large if youth are no longer incarcerated in Angola, and (2) an intrusion into state affairs and their ability to effectuate the will of the legislature. Neither holds water.

First, Defendants claim that incarcerating children in Angola is "a necessary tool to safely house youth" and to protect others. Dkt. 5-1 at 13. This is untrue; as OJJ operated for decades without incarcerating children there, and officials testified they plan to close the unit in a few months. *See* Doc. 267 at 3. Defendants offer no evidence that keeping children in Angola meaningfully prevents violence. In fact, they insist youth engage in similar disruptive behavior at Angola as in other OJJ facilities, and use this behavior to justify ongoing constitutional violations. *See, e.g.*, Dkt. 5-1 at 2, 22-23. There are ways to ameliorate the risks Defendants fear, including offering rehabilitative and treatment services at other secure OJJ facilities, and adequately staffing those facilities so youth cannot escape.

Second, the PI Order is not an impermissible intrusion in state affairs. *See also supra* Part II.C.2. Defendants cite *Morales v. Turman*, 562 F.2d 993, 999 (5th Cir.

1977), for the uncontroversial proposition that "a court is not in 'a position to monitor day-by-day changes that affect rehabilitation programs.'" *See* Dkt. 5-1 at 13. But *Morales* dealt with an order requiring "extremely detailed minimum standards" for the operation of juvenile facilities, even mandating specific IQ tests to be administered. 562 F.2d at 997. This Court rejected that order due to "excessive[] detail[]," and "rigid set of requirements" preventing facilities from "adequately adjusting to … changes." *Id*. at 999.[18] That rationale does not apply to the PI Order, which simply observes that a specific facility is not meeting already established constitutional requirements, and orders Defendants to transfer about a dozen children to a different OJJ facility.

Finally, the order does not intrude in OJJ operations. Courts "must not shrink from their obligation to enforce the constitutional rights of all persons, including prisoners. Courts may not allow constitutional violations to continue simply because a remedy would involve intrusion into the realm of prison administration." *Plata*, 563 U.S. at 511 (citations, quotation marks omitted).

---

[18] Defendants likewise cite *Valentine v. Collier*, 956 F.3d 797 (5th Cir. 2020). That case, involves an order with a number of "immediate" and specific "demands" on prison officials, including mandating the frequency and type of COVID testing, the specific timing and method of cleaning surfaces to protect against COVID-19, and other similarly detailed prescriptions. 956 F.3d at 803. *Valentine* is inapposite for the same reasons as *Morales*: the PI Order does not include such specific limitations on the day-to-day management of OJJ facilities.

### III.    Staying the PI Order Will Substantially Injure Plaintiffs

Plaintiffs will suffer significant harm from any further delay in implementing the PI Order. The court held the current record before it showed

> 1) the psychological harm of being in an adult prison cell has already been heavily detailed by the Court [*see, e.g.*, Doc. 79 at 37, 48, 60]; 2) there is new evidence of the excessive and/or unwarranted use [of] cell restriction/macing which further demonstrates psychological harm; and 3) the lack of education, mental health, and rehabilitative services furthers the harm to children and sets them back further.

Doc. 276 at 18.[19]

In sum, continuing to confine children in Angola, with its use of solitary confinement, harshly punitive conditions, and denial of education, mental health treatment, rehabilitative programs, and access to families, will cause irreparable and substantial injury to Plaintiffs. A stay is thus unwarranted.

### IV.    The Public Interest Weighs Against a Stay

"It is always in the public interest to prevent the violation of a party's constitutional rights." *Def. Distributed v. U.S. Dep't of State*, 838 F.3d 451, 458 (5th Cir. 2014) (citation omitted). As "confidence in the humane application of the governing laws of the State must be in the public's interest," *Harris v. Johnson*, 323

---

[19] The risk of irreparable harm was detailed in the U.S. DOJ Statement of Interest (SOI) filed with the court to underscore the "lasting," "serious," and "irreparable" harms to youth subjected to the alleged conditions. Doc. 183 at 1, 5. The SOI set forth research and legal decisions, as well as many professional organizations that call for ending or severely limiting the use of solitary confinement on youth. *Id.* at 8-12; *see also supra* n. 9. DOJ noted "[y]outh are particularly vulnerable to harmful conditions of confinement such as those alleged because their brains are still developing, and they lack adequate coping mechanisms." Doc. 183 at 5.

F. Supp. 2d 797, 810 (S.D. Tex. 2004), public interest considerations weigh strongly in favor of enjoining Defendants from continuing to incarcerate children in Angola. Doc. 267 at 18-20. As the court found, Plaintiffs showed a likelihood of prevailing on their constitutional and statutory claims, and they face a risk of irreparable harm. Simply put, the public interest is not served when children are traumatized and damaged.

Finally, Defendants' public safety arguments are a red herring. Dkt. 5-1 at 14. Defendants' failure to properly staff or supervise its other OJJ facilities does not justify the ongoing unconstitutional conditions in Angola. Unsupported conclusory speculation about public safety risks do not defeat the enforcement of incarcerated persons' constitutional rights. *Plata*, 563 U.S. at 511. The Supreme Court explained:

> The PLRA's requirement that a court give "substantial weight" to public safety does not require the court to certify that its order has no possible adverse impact on the public. . . . Whenever a court issues an order requiring the State to adjust its incarceration and criminal justice policy, there is a risk that the order will have some adverse impact on public safety in some sectors. . . . Yet the PLRA contemplates that courts will retain authority to issue orders necessary to remedy constitutional violations, including authority to issue population limits when necessary.

*Id*. at 534.

Unlike *Plata*, any public safety implications of the PI Order are modest. Plaintiffs will remain in state custody, in locked juvenile facilities subject to lawful

security precautions Defendants see fit. Under these circumstances, injunctive relief to halt the ongoing risk of harm the Court has found is clearly in the public interest.

## CONCLUSION

For the foregoing reasons, Defendants' Motion (Dkt. 5-1) should be denied.

Respectfully submitted, September 15, 2023.

/s/ *David J. Utter*
David J. Utter, LA 23236 *
**The Claiborne Firm, P.C.**
410 East Bay Street
Savannah, GA 31401
(912) 236-9559
david@claibornefirm.com

/s/ *Corene T. Kendrick*
Corene T. Kendrick, CA 226642 **
Marisol Dominguez-Ruiz, CA 345416**
**ACLU National Prison Project**
39 Drumm St.
San Francisco, CA 94111
(202) 393-4930
ckendrick@aclu.org
mdominguez-ruiz@aclu.org

/s/ *Christopher J. Murell*
Christopher J. Murell, LA 32075
**Murell Law Firm**
2831 St. Claude Ave.
New Orleans, LA 70117
(504) 717-1297
chris@murell.law

/s/ *Nancy Rosenbloom*
Nancy Rosenbloom, NY 2168425 **
**ACLU National Prison Project**
125 Broad Street
New York, NY 10004
(202) 393-4930
nrosenbloom@aclu.org

/s/ *Tammie Gregg*
Tammie Gregg, MN 26240 ***
**ACLU National Prison Project**
915 15th St. N.W.
Washington D.C. 20005
(202) 393-4930
tgregg@aclu.org

/s/ *Susan M. Meyers*
Susan M. Meyers, LA 29346 **
Ashley Dalton, LA 40330
**Southern Poverty Law Center**
201 St. Charles Ave., Ste. 2000
New Orleans, LA 70170
(504) 512-8649
susan.meyers@splcenter.org
ashley.dalton@splcenter.org

/s/: *Nora Ahmed*
Nora Ahmed, NY 5092374
Meghan Matt, LA 39975 **
**ACLU Foundation of Louisiana**
1340 Poydras St., Ste. 2160
New Orleans, LA 70112
(504) 522-0628
nahmed@laaclu.org
mmatt@laaclu.org

/s/: *David Shanies*
David Shanies, NY 4471140
**Shanies Law Firm**
110 W. 40th St., 10th Floor
New York, NY 10018
(212) 951-1710
david@shanieslaw.com

/s/: *Sara Godchaux*
Sara Godchaux, LA 34561
**Stuart H. Smith Law Clinic**
**Loyola University New Orleans College of Law**
7214 St. Charles Ave., Box 902
New Orleans, LA 70118
(504) 861-5560
shgodcha@loyno.edu

/s/: *Ronald Haley, Jr.*
Ronald Haley, Jr., LA 30900
**Haley & Associates**
8211 Goodwood Blvd., Ste. E
Baton Rouge, LA 70806
(225) 755-9925
rhaley@ronaldhaleylawfirm.com

* *Lead Counsel,* Application for admission to Fifth Circuit pending

**Application for admission to Fifth Circuit forthcoming

***Application for admission to Fifth Circuit forthcoming; not admitted in DC; practice limited to federal courts

**ATTORNEYS FOR PLAINTIFFS**

## <u>CERTIFICATE OF COMPLIANCE</u>

This motion contains 5,904 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f). Accordingly, Plaintiffs'-Appellees' have sought the Court's leave to exceed the type-volume limitations of FED. R. APP. P. 27(d)(2).

This motion complies with the typeface requirements of FED. R. APP. P. 27(d)(1)(E) and 32(a)(5) and the type style requirements of FED. R. APP. P. 27(d)(1)(E) and 32(a)(6) because it had been prepared in a proportionately spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: September 15, 2023              */s/ Christopher Murell*
                                       Christopher Murell
                                       Counsel for Plaintiffs-Appellees

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on September 15, 2023, a copy of the brief for

Appellees was served via electronic case filing with the Clerk of the Court and all

registered ECF users by using the CM/ECF system.


*/s/ Christopher Murell*
Christopher Murell
Counsel for Plaintiffs-Appellees
